Anwar VARDAG, M.D., Plaintiff,

v.

MOTOROLA, INC., Defendant.

No. 02–80717–CIV.

United States District Court, S.D. Florida.

May 8, 2003.

George Louis Sigalos, Simon, Sigalos & Spyredes, Boca Raton, FL, for plaintiff.

Courtney Blair Wilson, Gaye Lon Huxoll, Shook, Hardy & Bacon, Miami, FL, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HURLEY, District Judge.

**THIS CAUSE** comes before the court upon the defendant Motorola, Inc.'s motion for summary judgment as to all counts of the plaintiff's complaint on the ground that plaintiff, a third-party medical services provider, lacks direct or derivative standing to pursue a claim for benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001–1461, because the plan contains a provision barring the assignment of rights. This court concludes that the anti-assignment clause prohibits assignment of a cause of action to a medical provider, and that the clause is enforceable. Accordingly, defendant's motion will be granted.

### BACKGROUND

Plaintiff Anwar Vardag, M.D. is a pediatric intensive care physician practicing in Palm Beach County, Florida. Dr. Vardag is employed by the West Boca Medical Center. Defendant Motorola, Inc. is an corporation engaged in the business of designing and manufacturing wireless communications products that conducts business worldwide and in a number of states, including Florida. Motorola was the plan

administrator of an employee medical benefits plan.

John Kastritis, a resident of Lighthouse Point, Fla., was a participant under the plan. His son, James Kastritis, was a covered dependent and a beneficiary. Dr. Vardag provided medical services to James from June 30, 2001 through November 11, 2001. Mr. Kastritis assigned his claims for benefits under the plan to Dr. Vardag. Dr. Vardag, in turn, delivered invoices to Motorola for his services totaling $49,600.00. Dr. Vardag alleges that he has demanded reimbursement from Motorola for the medical services rendered, but Motorola has failed to pay the sum. Plaintiff contends that after payment from secondary insurance sources, he is owed a balance of $4,320.00.

On July 31, 2002, Dr. Vardag filed a complaint in this court, setting forth claims of breach of plan obligations and for declaratory relief.

### JURISDICTION AND VENUE

This court possesses federal subject-matter jurisdiction under 28 U.S.C. § 1331 because plaintiff's complaint raises a claim arising under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Southern District of Florida.

### DISCUSSION

#### A. LEGAL STANDARD

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could find in his favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). In response to a properly-supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322, 106 S.Ct. 2548. If the non-moving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the court must

enter summary judgment for the moving party. *Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir.1998).

## B. MERITS OF PLAINTIFF'S CASE

Defendant contends that judgment should be entered in its favor on plaintiff's claims on the ground that under the terms of the plan, the plan participant or beneficiary may not assign or alienate his rights under the plan. Specifically, the plan contains an "anti-assignment clause" which states:

> **16.3 Rights May Not Be Assigned or Alienated.** To the extent permitted by law, the rights of any Participant under the Plan may not be voluntarily or involuntarily assigned or alienated; provided, however, that all benefits of a Participant shall be paid to the permitted providers of Medical Care except to the extent that the Participant submits a provider statement showing that the Participant has paid the provider all or a portion of the covered expenses for which benefits are payable under the Plan.

Motorola contends that this provision bars a participant or beneficiary from assigning his right to payment of medical benefits to his provider, and that the provision is enforceable.

Plaintiff, on the other hand, contends that the anti-assignment clause is intended only to preclude the participant or beneficiary from transferring rights to actual medical services to another individual not covered by the plan or diverting benefit funds to an unrelated debt. Dr. Vardag argues that since the plan contemplates that in most circumstances the plan may make direct payments to health care providers for services rendered to plan participants and beneficiaries, the clause does not prohibit assignments of a cause of action to a provider.

A group health insurance policy purchased by an employer from insurer is an "employee benefit plan" within the meaning of ERISA because it relates to medical benefits. *See* 29 U.S.C. § 1002(1); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). The interpretation of the terms of an ERISA-governed benefits plan is a matter to be decided by the court. *See International Union, United Auto., Aerospace & Agric, Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999). The only parties that have standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, Section 502, codified at 29 U.S.C. § 1132(a). *See Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir.1997) (per curiam). Section 1132(a) states as follows:

(a) **Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .

"ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan—plan beneficiaries and plan participants." *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir.1998).

A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries

may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8); *Engelhardt,* 139 F.3d at 1351.

The Eleventh Circuit has held that health care providers are not "participants" or "beneficiaries" and therefore lack independent standing to sue under ERISA. *See Cagle,* 112 F.3d at 1514. However, a health care provider may acquire standing to bring an action against an ERISA plan if the plan participant or beneficiary executes an assignment of his right to payment of medical benefits to the health care provider. *See Hobbs v. Blue Cross & Blue Shield of Ala.,* 276 F.3d 1236, 1241 (11th Cir.2001). While ERISA, 29 U.S.C. § 1056(d)(1), expressly prohibits assignment of pension benefits, the Eleventh Circuit noted that "neither 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 991 (11th Cir.2001).

Several federal appellate courts have held that an assignee of ERISA-covered medical benefits has derivative standing to bring an action under Section 1132(a) against an ERISA plan if the plan does not forbid assignments of benefits. *See City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.,* 156 F.3d 223, 226 (1st Cir.1998); *Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan,* 25 F.3d 616, 619 (8th Cir.1994); *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991); *Hermann Hosp. v. MEBA Med. & Ben. Plan,* 845 F.2d 1286, 1289–90 (5th Cir.1988) (*Hermann I*); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1379 (9th Cir.1986).

The Third Circuit, on the other hand, has refused to recognize assignee standing under ERISA. *See Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 154 n. 6 (3d Cir.1985) ("Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf.").

Some health plans, however, contain anti-assignment provisions that purport to prohibit a participant from assigning his rights under the plan. In *Cagle,* the Eleventh Circuit expressly noted that while it held that a health care provider could acquire derivative standing based upon an assignment from the participant, it "decline[d] to address the issue of whether a provider-assignee can sue an ERISA plan, where the terms of the plan forbid such an assignment." *Cagle,* 112 F.3d at 1516 n. 3.

Most of the circuit courts that have considered the issue have held that where a plan contains an anti-assignment provision, the provision is enforceable, and the assignment is ineffectual. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal–Mart Stores, Inc.,* 298 F.3d 348, 352 (5th Cir.2002); *City of Hope,* 156 F.3d at 228–29; *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield,* 49 F.3d 1460, 1464–65 (10th Cir.1995); *Davidowitz v. Delta Dental Plan of Calif., Inc.,* 946 F.2d 1476, 1481 (9th Cir.1991); *see also, e.g., Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't,* No. CIV. A. 98–4116, 1999 WL 600539 (E.D.Pa. Aug.10, 1999); *Neurological Res., P.C. v. Anthem Ins. Cos.,* 61 F.Supp.2d 840, 845–46 (S.D.Ind.1999); *Parkside Lutheran Hosp. v. R.J. Zeltner & Assocs.,* 788 F.Supp. 1002, 1004–05 (N.D.Ill.1992); *Washington Hosp. Ctr. Corp. v. Group Hospitalization & Med. Servs., Inc.,* 758 F.Supp. 750, 755 (D.D.C. 1991). These courts have reasoned that

ERISA leaves "the assignability of benefits to the free negotiations and agreement of the contracting parties." *St. Francis,* 49 F.3d at 1464.

The Fifth Circuit, however, has noted that the validity of any assignment depends on the construction of the plan at issue, and courts must employ the universally-recognized canons of contract interpretation to the "plain wording" of the plan's anti-assignment clause. In at least two cases, the Fifth Circuit has carefully analyzed the language of a plan's prohibition on assignments and concluded that the plan did not prohibit the assignment of causes of action to health care providers. In *Hermann Hosp. v. MEBA Med. & Ben. Plan,* 959 F.2d 569, 574 (5th Cir.1992) (*Hermann II*), the court held that the ERISA plan was estopped from enforcing its anti-assignment clause because it had failed to assert the invalidity of assignment at an earlier stage.

In a more recent case, *Dallas County Hospital Dist. v. Associates' Health and Welfare Plan,* 293 F.3d 282 (5th Cir.2002), the Fifth Circuit held that a hospital could assert standing as an assignee in an action against a health plan for benefits despite the plan's inclusion of a sweeping anti-assignment provision. *See id.* at 289. The hospital argued that because it was a network provider, the assignment was not prohibited, but was actually anticipated and approved by the plan. *See id.* at 288. The plan contended that the network assignment clause did not contemplate the assignment of medical coverage benefits, but merely authorized the direct payment of benefits to such providers. *See id.* The court held that the plan in-fact provided for certain exceptions to the blanket provision, including an authorization to assign benefits to network providers: "Due to our health care network guidelines in several states, assignment may be made directly

to the provider in states where a statewide health care network exists." *Id.*

■ In this case, plaintiff does not contend that the anti-assignment provision is unenforceable. Rather, he contends that the particular language of the provision is somewhat ambiguous and may, in fact, permit assignments of causes of action to health care providers for payment of medical benefits. Dr. Vardag notes that the anti-assignment clause in Motorola's plan prohibits a participant from assigning any "rights" under the plan. He argues that this court should follow the reasoning of the Eighth Circuit in *Lutheran Medical Center* and interpret the prohibition of assignment of "rights" as excluding assignments of claims for reimbursement following the denial of benefits.

However, the anti-assignment provision in Motorola's plan is quite sweeping, and closely resembles the language of the anti-assignment clauses in the plans at issue in the cases before the federal appeals courts that have upheld those clauses and held that the health care providers lacked standing because the purported assignments were invalid. "As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions." *Davidowitz,* 946 F.2d at 1478. Federal courts, in interpreting the provisions of an ERISA plan, must employ the traditional canons of interpretation. *See LeTourneau,* 298 F.3d at 352. Applying ordinary principles of contract interpretation, this court concludes that, under the plain language of the terms of Motorola's plan, the prohibition of the assignment of "rights" under the plan clearly encompasses the right of a participant or beneficiary to seek reimbursement for benefits allegedly due under the plan.

While plaintiff notes that the plan does not expressly preclude the assignment of benefits to the health-care provider who provided the medical care, the failure to

include an express prohibition with respect to a particular type of assignment is inconsequential in light of the broad language of the anti-assignment provision, which clearly prohibits the assignment of all rights under the plan. Nor does the court find, as the *Dallas County* court determined, that the plan is ambiguous with respect to whether assignments to medical services providers are prohibited. Moreover, the court declines to follow the Eighth Circuit's approach in *Lutheran Medical Center* of manufacturing a distinction between an assignment of benefits and an assignment of a cause of action following the denial of benefits. *See St. Francis*, 49 F.3d at 1467 n. 10 (stating that health care benefits include the right to bring an action to recover such benefits). This court will not read ambiguity into the contract when there is none.

Certainly, there may be great value in permitting assignment of a cause of action to a health care provider because the provider will often be more sophisticated with respect to medical billing issues and have better access to legal services than the plan participant or beneficiary. The court is quite troubled by the fact that anti-assignment clauses have the effect of hindering plan participants from prosecuting claims for reimbursement. However, courts have noted that anti-assignment provisions play an important role in constraining the costs of health care by assuring direct payments to health care providers that participate in the insurer's health plan, thereby encouraging nonparticipating providers to join the plan. Those courts have determined that anti-assignment clauses do not violate public policy and are enforceable. *See, e.g., City of Hope*, 156 F.3d at 228–29; *St. Francis*, 49 F.3d at 1467–68. This court concludes the same.

### Conclusion

For the forgoing reasons, the court concludes that the broad anti-assignment pro-

vision in Motorola's plan applies to prohibit the assignment of a cause of action for reimbursement to a health care services provider, the provision is valid and enforceable, and therefore the purported assignment of benefits from Mr. Kastritis, the participant, to Dr. Vardag, the provider, is void. In the absence of a valid assignment of benefits, Dr. Vardag lacks direct or derivative standing to prosecute an action against the plan administrator for benefits allegedly due under the plan.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that defendant's motion for summary judgment as to the plaintiff's claims [DE # 13] is **GRANTED**. A final judgment will be issued in a separate order.